IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KAREEM BERLIN FARRIOR,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Civil Action No. 3:12cv69**

**M. GORE, Correctional Officer, and
HAWKINS, Correctional Officer,**

    **Defendants.**

## ORDER DENYING BIVENS COMPLAINT

### I. Procedural History

Pending before the undersigned is the *pro se* plaintiff's July 30, 2012 civil rights complaint under 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971). Along with his complaint, the plaintiff filed a motion to appoint counsel. By Order entered July 31, 2012, the plaintiff's motion for appointed counsel was denied. By separate Order the same day, the plaintiff was granted permission to proceed *in forma pauperis*. The plaintiff paid the initial partial filing fee on September 17, 2012.

On September 18, 2012, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted at that time. Therefore, the defendants were directed to answer the complaint. On November 16, 2012, the defendants filed a motion for an extension of time. By Order entered November 26, 2012, the defendants' motion for an extension of time was granted.

On December 26, 2012, the defendants filed a motion to dismiss, or in the alternative, for summary judgment. On January 2, 2013, notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to the plaintiff, advising him of his right to file a response to the

1

defendant's dispositive motion. On January 7, 2013, the plaintiff filed a response to the defendants' motion, along with a second motion to appoint counsel, and a Plaintiff's First Request for Production of Documents. By Order entered January 8, 2013, the plaintiff's motion for discovery was denied as premature. By separate Order entered the same day, the plaintiff's second motion for appointed counsel was denied.

By Order entered on January 18, 2013, a January 16, 2013, 2011 motion for referral of this case to the undersigned, with the consent of all parties to the U.S. Magistrate Judge's jurisdiction, was granted. Accordingly, this case is before the undersigned for the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## II. Contentions of the Parties

### A. Plaintiff's Complaint

In his complaint, the plaintiff, now housed at U.S.P. Victorville, in Adelanto, California, raises excessive force allegations against the defendants, who are staff members at U.S.P. Hazelton in Bruceton Mills, West Virginia, arising out of an incident that occurred on April 29, 2011. Plaintiff alleges that his constitutional rights were violated when he was assaulted by defendant Correctional Officer M. Gore ("Gore") while being escorted with his hands cuffed behind him; that Gore "aggressively pulled on my arm," and that he "reacted by shrugging . . . [his] shoulder to get a better understanding as to why . . . Gore . . . would pull on my arm." He asserts that Gore then struck him in the shoulder with his elbow; and while he was already attempting to "get down" and kneel on the floor, Gore slammed him face-first into the floor. As a result, plaintiff contends he sustained a laceration above his left eye, described variously in plaintiff's medical records as 2.5 inches[1] or 3.0 cm[2] long and 4-5 cm.[3] deep, necessitating seven

---

[1] Dkt.# 31-2 at 10.

stitches. He alleges that defendant C.O. Hawkins ("Hawkins"), who was present, failed to intervene, and instead "instigated the situation by yelling in a barbarous tone to 'take him down.'"

As relief, plaintiff seeks a declaration that his rights were violated by the defendants' actions; $700,000.00 in compensatory damages from each of the defendants "jointly and severally;" punitive damages in the amount of $300,000.00 from each defendant; costs; and a jury trial on all issues.

**B. Defendants' Motion to Dismiss, or in the Alternative, For Summary Judgment**

In its motion to dismiss, or in the alternative, for summary judgment, the defendants assert that the case should be dismissed because the defendants did not use excessive force as alleged by the plaintiff, and further, they are entitled to qualified immunity. Because there is no genuine issue as to any material fact, they are entitled to judgment as a matter of law.

**C. Plaintiff's Response to Defendants' Motion to Dismiss**

The plaintiff reiterates the claims made in his original complaint, and attempts to refute the defendant's arguments on the same.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and

---

[2] Dkt.# 31-2 at 8.

[3] Presumably this was error and the laceration was actually only 4-5 *mm.* deep. It is physically impossible for a laceration on the forehead to be 4.5 cm. (or 1.77 inches) deep, because the skin on the forehead is not thick enough to sustain such an injury.

construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, *supra* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for

summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, *supra* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, *supra* at 587 (citation omitted).

## IV. Analysis

### A. Excessive Force

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312 , 321-22 (1986). In order for a plaintiff to prove

5

a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis.*" Norman, 25 F.3d at 1263. In Norman, a jail officer swung his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face and the keys hit his thumb, causing his hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries, proving that *de minimis* force was used. Further, in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), cert. denied, 525 U.S. 1181 (1999), the Fourth Circuit found that a detainee who received "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the

6

mucous membranes of the mouth" as a result of an incident had sustained *de minimis* injuries. On the other hand, the United States Supreme Court has found that "bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis*. Hudson 503 U.S. at 10.

Although a *de minimis* injury reveals that *de minimis* force was used, Id. at 1262, the Fourth Circuit has held that in certain circumstances, a claim may be made even if the injury is *de minimis*. Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. *Cf*. Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the *de minimis* force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

Recognizing the principle that an injury does not have to be visible to be impermissible, the Fourth Circuit has held that "[m]ankind has devised some tortures that leave no lasting physical evidence of physical injury." Williams v. Benjamin, 77 F.3d 756, 762 and 762 n.2 (4th Cir. 1996)(inmate was strapped down, spread-eagled, for 8 hours in 4-point restraints after being sprayed with mace and not permitted to wash it off, use a toilet, or receive medical attention). See also, Jordan v. Gardner, 986 F.2d 1521, 1526, 1546 (9th Cir. 1993) (en banc)(the psychic pain female prisoners suffer when subjected to cross-gender pat down search satisfies the objective component of an 8th Amendment analysis, i.e., whether an injury inflicted is sufficiently serious).

Here, however, even when drawing all reasonable inferences in plaintiff's favor, the Court makes the following findings. The plaintiff's response to the motion for summary

judgment with its attached affidavit, when viewed in light of the evidence, including the defendants affidavits; the defendants' testimony before the OIA, as well as the testimony of other officers on duty that day, do not support a finding in favor of the plaintiff. The plaintiff admits that he "shrugged his shoulder at" and was upset and uncooperative with Gore,[4] but he omits mention of the instigating circumstances that immediately preceded the altercation. The defendants, on the other hand, present evidence, including a copy of the video surveillance footage of the incident, reviewed by Lt. William Holzaphel,[5] to show that the plaintiff attempted to pull away from Gore toward an inmate in a cell they were passing by as he was being escorted;[6] plaintiff stopped at the other inmate's cell and refused to move along when instructed to do so;[7] Gore gave several verbal warnings prior to applying force to regain control of plaintiff (Dkt.# 31-2 at 17; the plaintiff ignored the verbal warnings;[8] when Gore placed his hand on plaintiff's arm to walk him toward his cell, plaintiff aggressively turned toward him and threw his shoulder toward Gore's body;[9] Gore first placed the plaintiff "against the wall" in an attempt to regain control over him;[10] plaintiff was given several opportunities to discontinue his

---

[4] See Plaintiff's Affidavit, Dkt.# 34-1.

[5] Lt. William Holzaphel is employed by the BOP, and on the day in question, was assigned as the Special Housing Unit Lieutenant. He testified before the OIA that although he did not witness the actual incident because he was off the unit when it occurred, he responded to the staff's call for assistance and observed medical staff providing treatment to plaintiff after the incident. He conducted the video debrief of the incident and provided a report to the OIA when the plaintiff filed his complaint.

[6] See Statement of Senior Officer Michael Hawkins to Office of Internal Affairs ("OIA"), Dkt.# 31-2 at 16 - 17; Statement of Senior Officer Specialist Jeff Steeber to Office of Internal Affairs. Id at 17; Declaration of Michael Gore, Dkt.# 31-3 at 1.

[7] See Statement of Senior Officer Michael Gore to OIA, Dkt.# 31-2 at 17; Statement of Senior Officer Michael Gore to OIA, Id. Declaration of Michael Gore, Dkt.# 31-3 at 1.

[8] See Statement of Senior Officer Michael Gore to OIA, Dkt.# 31-2 at 17.

[9] See Declaration of Michael Gore, Dkt.# 31-3 at 1 and Declaration of Michael Hawkins, Dkt.# 31-4 at 1.

[10] See Statement of Senior Officer Michael Hawkins to OIA, Dkt.# 31-2 at 17; Statement of Senior Officer Michael Gore to OIA, Id.

disruptive behavior before being taken to the floor by Gore and Hawkins;[11] the force applied was the minimum necessary and was not excessive;[12] leg irons had to be applied to plaintiff to finally subdue him;[13] the injury plaintiff received was not intentional;[14] plaintiff made no allegation of staff misconduct after the incident;[15] and plaintiff was given immediate medical attention for his injury, after finally being subdued.[16]

Further, after a June 28, 2011 letter by the plaintiff complaining about the incident, the Warden at U.S.P. Hazelton authorized an investigation in August 2011. Shawn Burchett, Special Investigative Agent, was assigned to conduct the investigation. His November 3, 2011 OIA Investigative Report ("the Report") regarding the alleged "Physical Abuse of Inmates" by Gore refutes the plaintiff's claim that the force was unjustified or unreasonably applied; video surveillance of the incident showed plaintiff "clearly disobeying staff orders and . . . struggling with staff as they attempt to regain control of him[.]"[17] Dkt.# 31-2 at 18.

Because the defendants have attached affidavits, exhibits and other documents to their motion, the Court construes it as a motion for summary judgment. The nonmoving party is required "to make a sufficient showing on an essential element of her case with respect to which

---

[11] See Statement of Senior Officer Specialist Jeff Steeber to OIA, Dkt.# 31-2 at 17; Declaration of Michael Hawkins, Dkt.# 31-4 at 1; Declaration of Michael Gore at Dkt.# 31-3 at 2; Statement of Senior Officer Michael Gore to OIA, Dkt.# 31-2 at 17; and Statement of Senior Officer Michael Hawkins to OIA, Id. at 16 – 17.

[12] See Declaration of Michael Gore, Dkt.# 31-3 at 2; Statement of Senior Officer Specialist Jeff Steeber to OIA, Dkt.# 31-2 at 17.

[13] See Statement of Senior Officer Michael Hawkins to OIA, Dkt.# 31-2 at 16; Statement of Senior Officer Chris Crank to OIA, Id.; Senior Officer Specialist Jeff Steeber to OIA, Dkt.# 31- at 17.

[14] See Statement of Senior Officer Michael Gore to OIA, Dkt.# 31-2 at 17; Declaration of Michael Gore, Dkt.# 31-3 at 2.

[15] See Statement of Lt. William Holzaphel to OIA, Dkt.# 31-2 at 17.

[16] See Statement of Senior Officer Michael Hawkins to OIA, Id.

[17] The pro se law clerk assigned to this matter reviewed the video footage of this incident and confirmed that the version of the incident attested to by the defendants is accurate in all respects.

she has the burden of proof." Celotex Corp. *supra* at 322. The plaintiff's response to the defendant's motion, even with its attached affidavit, does not meet this standard. Based on the record currently before the Court, the force used against the plaintiff was applied by defendants Gore and Hawkins, who admit that they took the plaintiff to the floor after he became disruptive and combative. However, it is clear that the forced used was applied in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm. The weight of the evidence, including the video surveillance footage of the incident, does not support a finding that excessive force was used. There is, therefore, "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c).

Accordingly, because the plaintiff has neither shown that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation,"[18] nor can he establish that the prison officials inflicted unnecessary and wanton pain and suffering,[19] plaintiff has failed to make a colorable showing that the defendants used excessive force.

## V. Conclusion

For the reasons stated above, the defendants' motion to dismiss, or in the alternative, for summary judgment (Dkt.# 30), is **GRANTED**, and the *pro se* plaintiff's complaint (Dkt.# 1) is **DENIED** and **DISMISSED with prejudice** from the docket.

It is further **ORDERED** that the Clerk of Court shall enter judgment for the defendants.

Should the plaintiff choose to appeal the judgment of this Court to the Fourth Circuit Court of Appeals, he is **ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order**, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. Consistent with Local Rule 3(a) of the Fourth Circuit

---

[18] Norman, *supra* at 1262.

[19] Hudson, *supra* at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

Court of Appeals, along with the filing of his notice of appeal, plaintiff should also submit $455, which includes a $5 filing fee for the notice of appeal and a $450 fee for the docketing of the appeal. In the alternative, at the time the notice of appeal is submitted, the plaintiff may, in accordance with the provisions of Rule 24(a) of the Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit.

**IT IS SO ORDERED.**

The Clerk is directed to transmit copies of this order to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: February 26, 2013

>/s/ James E. Seibert
>JAMES E. SEIBERT
>UNITED STATES MAGISTRATE JUDGE